UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **CHRISTIAN RODRÍGUEZ MERCADO, ANGELINA HUYN**<br><br>Plaintiffs,<br><br>v.<br><br>**H.O.D INVESTMENTS INC.,**<br><br>Defendant. | CASE NO.:<br><br>RE: DECLARATORY JUDGMENT AND CIVIL ACTION<br><br>BREACH OF PERFORMANCE CONSTRUCTION DAMAGES<br><br>**JURY DEMAND** |

# COMPLAINT

**COMES NOW, Christian Anthony Rodríguez Mercado,** through its undersigned counsel, and very respectfully STATES, ALLEGES and PRAYS:

### I. THE PARTIES

1. **Christian Anthony Rodríguez Mercado ("Mr. Rodríguez")**, is of legal age, single, a Data Scientist, resident of Hayward, California and the owner of a lot located in Arecibo, Puerto Rico. His address is 22876 Charing St. Hayward CA 94541. **Angelina Huyn, ("Mrs. Huyn")** is of legal age, single, owner and resident of Antioch California. Mrs. Huyn is a capital investor and minority partner in the project object of this complaint. Her address is 5309 Judsonville Dr. Antioch CA 94531. (Together, Mr. Rodríguez and Ms. Huyn are referred to herein indistinctly as "Plaintiffs" or "Owner".)

2. **H.O.D. INVESTMENTS Inc., (HOD)** is a corporation organized under the laws of the Commonwealth of Puerto Rico and authorized to do business in this jurisdiction with its principal place of business in Moca, Puerto Rico. HOD's President is Hector A. Colón-Avilés, and its Vice President is

Mr. Jorge Luis Cajigas-Acevedo. Upon information and belief its address is Carr. 111 Km 3.1, Bo. Pueblo, Moca, PR, 00676, and mailing address is P.O. Box 1580 Moca PR 00676; (787) 877-8079; hodinvestments@gmail.com.

## II.    JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (a)(2) since the parties are citizens of different states and the amount in controversy exceeds $75,000.00 exclusive of costs and interests.

2. The venue is proper under 28 U.S.C. §1391(a) and (b) since Defendant is a resident of this district, and the events and omissions giving rise to the claims asserted herein occurred in this district. Moreover, the property that is the subject of the action is situated in this district.

## III.    FACTS

*a. The Contract executed between the parties.*

1. Mr. Rodríguez, a native of Puerto Rico, who has been working and residing in the state of California for the past 15 years, is the owner of a parcel of land in Bo. Islote, Parcela 2, Arecibo, Puerto Rico, 00612.

2. Mr. Rodríguez purchased the Arecibo property with the purpose of developing a two-story residential property consisting of four (4) bedrooms with a pool area that would in turn be used to rent to tourists. The development project was named the Arecibo Retreat ("Arecibo Retreat"). Plaintiff's plans were to turn the Arecibo Retreat into a vacation spot in Puerto Rico and once the construction was finalized, promote and lease the Arecibo Retreat to international clients through short term rentals.

3. Mrs. Huyn, a capital investor in the Arecibo Retreat, invested the amount of $200,000.00 for the construction and development of said property.

4. Mr. Rodríguez hired Architect Jorge F. Ramirez Buxeda from the firm of Architectural Studios PSC (the "Arquitect") to design the Arecibo Retreat and prepare the structural drawings, plans and specifications.

5. On September 21, 2023, HOD represented by its Vice President, Mr. Jorge Luis Cajigas Acevedo and Mr. Rodríguez executed a contract for the construction of the Arecibo Retreat as general contractor.

6. The Contractor's duties and responsibilities are defined in the Construction Contract ("Contract") and its attachments. The contract included the following attachments: Partial Payment Certification with a breakdown of the work to be performed, Drawings, Plans and Specifications prepared by the Architect; Document related to item 12 of the Partial Payment Certification, "Poder" or power of attorney.

7. As per the terms and conditions of the Contract, HOD had to perform all the construction work related to the Arecibo Retreat in compliance with the plans and specifications provided by the Architect. Said documents were provided to HOD prior to the execution of the contract, were reviewed by the corresponding personnel from HOD and were attached to the Contract.

8. Clause 2 of the construction contract described the scope of the work that had to be performed by HOD. Said work included the following: mobilization, excavation and filing, concrete footing, concrete slab first floor, concrete wall and columns first floor; concrete beam second floor slab, concrete slab second floor, concrete wall and column second floor; concrete roof bean slab, concrete roof slab, concrete stairs connecting second floor, concrete stairs connecting drive way, concrete trash

3

disposal area, concrete wall in driveway, concrete footing in pool area concrete wall and floor in pool area, interior cement plaster and exterior cement plaster; 6x6 square steel tubes to support structural elements, 1-inch diameter circular steel tubes for structural elements, exterior and interior masonry, installation of floor ceramic tile (2 ft x 2 ft, Italic), installation of wall ceramic tile for bathrooms (2 ft x 1 ft, Italic), interior and exterior primer painting, residential plumbing facilities (rough-in), residential electrical facilities (rough-in), residential telecommunications facilities (rough-in), construction of swimming pool as per the plan received, with its filter and water pump.

9. The parties agreed that the contract sum was for the total amount of $650,000.00 and would be paid to the contractor in stages and in accordance with the Partial Payment Certification.

10. Moreover, the parties agreed that on or before the 10th day of each month the contractor would request payment for the services rendered by giving the owner or his representative the Partial Payment Certification. The owner in turn, had 10 days after receiving the certification to pay the contractor the amount approved by the owner if: (a) the work performed had been approved by the Designated Inspector of the Arecibo Retreat and complied with all the design requirements stipulated in the construction documents; or (b) pay any changes or modification on the work stipulated in the construction documents only if the changes in design had been approved in writing by the owner.

11. The parties agreed that the owner would withhold ten percent (10%) of all payments made to the Contractor for work completed under the contract and/or change orders approved by the owner as a retainage. The retained monies would be given to the Contractor if and when the work under the contract was completed and accepted by the Owner.

12. Finally, the parties agreed that the work had to start on or before November 27, 2023. Moreover, the contractor had 15 months to complete all the construction work – or by February 27,

2025. In other words, all the construction work had to reach the final acceptance stage and be ready for final payment on or before February 27, 2025.

13. The parties agreed that Mr. Jesús Rodríguez Cruz would be the owner's representative at the project. Mr. Rodríguez Cruz would always act on behalf of the owner and would intervene with the contractor in all matters related to the project, including - but without limitation to - inspections, change orders (with the Owner's written consent), permits and all aspects related to the project.

14. Engineer Abimael Santiago was named by the owner as the Designated Inspector.

15. On September 27, 2023, a partial approval to the construction permit was issued by the Government of Puerto Rico and notified to the contractor. On November 3, 2024, the construction permit was issued. Nonetheless, HOD started the construction of the Arecibo Retreat on or around February of 2024. That is, more than 2 months after the date agreed by the parties.

   b. ***Facts related to the contractor's noncompliance with the terms and conditions of the contract.***

16. On or around March 5, 2024, Plaintiffs started having problems with HOD. First, Mr. Rodríguez received an email communication from the contractor including a document entitled change order number 1 for $6,025.00. The change order attached to the email was dated February 26, 2024, and appeared to be related to certain work performed by the contractor between February 7 and February 26th, 2024, that was outside the scope of the Contract.

17. Per the terms of the contract executed between the parties all change orders needed to be notified to the owner and approved in writing. However, since the work performed by the contractor through change order number 1 was never notified to the Owner - nor approved by him - it was not paid to the contractor. An email communication to this effect was sent on March 5, 2024.

5

18.     In July 2024, an inspection was conducted by the Designated Inspector. There, the Designated Inspector informed that HOD had performed the work with certain deviations from the plans and specifications. Moreover, recommendations on how to correct said deviations were made. These corrections were related to work performed on the first floor of the project related to the plumbing, drainage, rebars and the unevenness between the terrace and interior floor, among others. HOD agreed to make said corrections.

19.     Moreover, by the end of August 2024, additional defects in the construction of the project related to the concrete walls were noticed by the owner's representative, documented with photographs and notified to the Designated Inspector.

20.     On August 23, 2024, the Designated Inspector visited the site to inspect the work related to the concrete walls of the first floor as requested by the owner. However, when the Designated Inspector visited the project, he realized that HOD had covered most of the areas - seen in the photographs - with concrete segregation in the walls with common mortar ("mezcla lista"), making it impossible to physically observe and evaluate the magnitude and severity of the deficiencies documented in the photographs provided by the owner.

21.     Nonetheless, with the photographs provided by the owner and the inspection conducted on August 23, 2024, a report entitled "Informe de Inspección Estructural" ("Report") was prepared by the Designated Inspector.

22.     The Report dated September 2, 2024, detailed several of the defects and deviations from the plans and specifications noticed by the Designated Inspector. What follows is a list of these defects and deviations: 1) the concrete deposited on the walls did not have the consistency, finish, or expected appearance of exposed architectural concrete, as specified in the construction drawings; 2) moderate to

severe segregation of concrete had occurred on various walls, exposing in some cases the reinforcing steel of the walls; 3) in addition to the areas covered with common mortar prior to the inspection, other areas with concrete segregation were observed that also required repair; 4) per information provided to the Designated Inspector, during the concrete pouring of the walls, the contractor did not use a vibrator to promote the consolidation of the mixture; 5) several twisted and crooked walls were observed due to poor alignment and shoring of the molds; 6) on the walls that were previously cast below floor level, an area was observed, specifically in the wall north of the terrace, which presented the same condition of excessive segregation of concrete with exposed steel. In addition, it was evident that a good portion of the wall reinforcing steel was exposed without concrete coverage, due to an incorrect alignment of the linkage within the concrete mold; 7) many of the exposed rebars that were left for connection and anchoring of other phases of the project, such as in the pool area, stairs and low walls present moderate corrosion; 8) exposed electrical and plumbing pipes were observed near the segregated areas 9) several unwanted construction joints could be seen in the walls.

23. The Report was notified to HOD on September 2, 2024, and HOD agreed to make the repairs recommended by the Designated Inspector.

24. Moreover, HOD and the owner agreed that from the Payment Certification submitted by HOD for the work performed during the period of July 2, 2024, to August 2, 2024, which was the object of the Report, a partial payment of 50% of the certification minus the retainage would be paid to HOD. The parties agreed that the other half of the certification would be paid once all the defects were corrected.

25. Nonetheless by October 5, 2024, there was little progress (if any) in the correction of the defects and deviations mentioned on the Report. Moreover, the construction work had not progressed

7

as agreed by the parties and was behind schedule.  The latter, since HOD lacked the necessary personnel to make the corrections and only had nominal staff working on site.

26. Therefore, and in view of the delays in the repairs of the construction work and the progress of the construction, the owner requested HOD to provide a working plan to go forward with the project. The Owner suggested that HOD use the same format as the Payment Certifications and indicate the percentage that needed to be completed of each remaining phase and the completion date. HOD failed to provide the working plan requested by the Owner.

27. Moreover, on or around January 2025 (just shy of a month when HOD had agreed to complete the project), HOD informed the Owner that they were abandoning the construction of the Arecibo Retreat. At that point in time, construction had only progressed less than thirty percent (30%) and the defects notified on the Report had not been corrected.

28. Consequently, and since HOD abandoned the construction of the Arecibo Retreat, and was in default with the terms and conditions of the construction contract, Mr. Rodríguez terminated the contract for cause as required in Clause 15. Mr. Rodríguez also requested payment for all the damages that HOD's breach of its obligations under the contract had caused him and his partner Mr. Huyn.

29. As of today, the construction of the Arecibo Retreat has not concluded, it remains at less than thirty percent (30%) completed. Moreover, in addition to the defects notified on September 2, 2025, there are numerous additional defects and deviations from the plans and specifications that were not accepted by the Owner. Said defects and deviations relate to the elevation of the structure, the electrical, plumbing and the alignment of the walls among others.

30.     Finally, on or around March 27, 2025, personnel from HOD visited the site without the authorization of the Owner and took the construction materials that belonged to the Owner, including pipes and structural bases of steel without permission. These materials have a current estimated value of $36,618.99.

### IV. First Cause of Action: Breach of Contract

1.     Plaintiffs incorporate by reference the allegations in paragraphs 1-32 of the complaint.

2.     Mr. Rodríguez signed a contract with HOD for the construction of the Arecibo Retreat. Pursuant to the contract, HOD had to start construction of the Arecibo Retreat on or before November 27, 2024, and complete it within 15 months. That is, on or before February 27, 2025. Nonetheless, as of this date less than thirty percent (30%) of the construction work of the Arecibo Retreat was completed by HOD. Moreover, at the time HOD abandoned the Arecibo Retreat, the work completed was defective and was not repaired, corrected or completed by HOD.

3.     HOD breached the terms of the contract when it abandoned and failed to complete the Arecibo Retreat as stipulated in the contract - also, when it did not hire the necessary contractors or employees to repair the defects and finish the work.

4.     HOD's failure to complete the construction of the Arecibo Retreat in the term agreed upon by the parties has caused and continues to cause damages to Plaintiffs.

5.     Moreover, the construction defects at the Arecibo Retreat and the deviations from the plans and specifications are of such nature and quantity that they cannot be repaired, or the costs to repair them are too high when considering to build anew. Also, the sudden abandonment by HOD of the site and the poor quality of the materials has caused the work performed to decay when being

exposed to the elements and salt air of the near-by Atlantic Ocean. Thus, the work performed by HOD must be demolished for the most part.

6. Consequently, HOD must reimburse Plaintiffs the amount of $194,135 paid to HOD for the construction of the defective work and $100,000.00 to demolish the same.

7. In addition, the costs to construct the Arecibo Retreat are estimated to be 30% higher than those originally agreed with HOD. The latter is due to an increase in the costs of construction, materials and labor. These costs need to be reimbursed to Mr. Rodríguez.

8. Moreover, Mr. Rodríguez and Mrs. Huyn have suffered additional economic damages since they have been unable to rent the four (4) units of the Arecibo Retreat as intended. Said losses are estimated at present to be around $166,950.00.

9. HOD needs to reimburse Mr. Rodríguez and Mrs. Huyn the sum of $36,618.99 for the material that they took from the site, without authorization, that belonged to Mr. Rodríguez including pipes and structural bases of steel.

10. Also, HOD's failure to comply with the contract has caused Plaintiffs pain and suffering. Said damages are estimated in an amount no less than $25,000.00 each.

11. Finally, HOD is responsible for the costs, expenses and attorney's fees incurred by Mr. Rodríguez and Mrs. Huyn in the present case.

## V. Jury Demand

Plaintiffs respectfully demand a trial by jury for all issues in this case that are triable by the jury.

## VI. Prayer for Relief

**WHEREFORE** it is respectfully requested from this Honorable Court that it grants the present complaint, and determine the following:

That HOD breached the contract with Mr. Rodríguez. Therefore, it was entitled to be terminated. Moreover Mr. Rodríguez and his partner Mr. Huyn are entitled to be reimbursed for all the damages that said breach of contract has caused them. At present said damages are estimated to be the following:

1. $100,000.00 for the demolition of the defective work.

2. $195,135.00 for the defective work paid by Owners.

3. $145,000.00 for the increase in construction costs to construct the Arecibo Retreat.

4. $166,950.00 for the economic damages and/or consequential suffered by Mr. Rodríguez and Mrs. Huyn.

5. $36,618.99 for materials removed from the site.

6. $25,000.00 (for each plaintiff) for the pain and suffering

7. The payment of costs, and attorney's fees incurred by Mr. Rodríguez and Mrs. Huyn in the prosecution of the instant claim, and;

8. Whatever other relief the Court deems just and proper.

**RESPECTFULLY SUBMITTED**

In San Juan, Puerto Rico, this August 13, 2025.

*s/ Jairo Mellado-Villarreal*
Jairo Mellado-Villarreal
USDC No.208112
jmellado@mellado.com

*/s/ Tessie Leal-Garabis*
Tessie Leal-Garabis
USDC No. 218408
tleal@mellado.com


MELLADO & MELLADO-VILLARREAL
165 Ponce de León Ave., Suite 102
San Juan, Puerto Rico 00917-1233
Tel. 787-767-2600/Fax 787-767-2645